**Patricia L. DWYER, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**No. 97–CV–1479.**

United States District Court, N.D. New York.

Oct. 19, 1998.

---

1. Effective September 29, 1997, Kenneth S. Apfel became the Acting Commissioner. Therefore, he has been substituted as the defendant in this action. Fed.R.Civ.P. 25(d)(1).

Bond and McDonald, Geneva, New York, (Mark M. McDonald, of counsel), for plaintiff.

Hon. Thomas J. Maroney, United States Attorney for the Northern District of New York, Syracuse, New York, (William H. Pease, Assistant U.S. Attorney, of counsel), for defendant.

### *MEMORANDUM–DECISION AND ORDER*

HURD, United States Magistrate Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability Insurance benefits and Supplemental Security Income. The parties have filed their briefs, including the Administrative

Record on Appeal, and the matter has been submitted for decision without oral argument.

## I. *PROCEDURAL HISTORY*

Plaintiff Patricia Dwyer filed applications for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI") on November 30, 1993. Plaintiff claimed to be disabled since May of 1988 due to panic attacks with symptoms including rapid heart rate, sweating, and feeling the need to isolate herself, as well as feeling faint and in a state of rage. (Pl.'s Br. at 3.) She also claims that the severity and frequency of the panic attacks depend on the level of stress she feels. *Id.* Both applications for benefits were denied on January 24, 1994. No appeal was taken from the denials. Plaintiff then reapplied on March 13, 1995 for SSI, and on June 29, 1995 for SSDI. Both of these applications were also denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"), which resulted in a decision that plaintiff was not disabled. Plaintiff then requested review by the Appeals Council. The ALJ's decision became the final decision on plaintiff's claim for SSDI and SSI when the Appeals Council denied the plaintiff benefits on September 19, 1997.

The plaintiff brought this action on October 14, 1997 and now seeks a judgment on the pleadings. The defendant has moved to remand the case for further administrative proceedings. For the reasons set forth below, the defendant's motion for remand should be granted.

## II. *FACTS*

This court adopts the facts set forth in plaintiff's brief.

## III. *CONTENTIONS*

Plaintiff contends that the ALJ's decision that the plaintiff can perform non-exertional work is not supported by substantial evidence and is based on incorrect legal standards for the following reasons:

1. The ALJ failed to accord the proper weight to Dwyer's treating physician's opinion and failed to analyze his opinion in accordance with the Commissioner's own regulations;

2. In assessing her credibility, the ALJ failed to accord proper weight to the plaintiff's subjective complaints of her symptoms; and

3. The ALJ improperly relied on § 204.00 Appendix 2, Subpart P, Regulation No. 4 as a framework in determining that the plaintiff can perform nonexertional work except for frequent contact with the public and failed to provide expert testimony as to what type of work plaintiff could perform.

## IV. *DISCUSSION*

### A. *Standard of Review*

A court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from it's weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Id.*

Additionally, the scope of review involves determining both whether the Commissioner has applied the correct legal standard as well as whether the determination is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguably supported

by substantial evidence, the Commissioner's decision may not be affirmed. *Id.* at 986.

 The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger,* 516 F.2d 1282 (2d Cir. 1975). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker,* 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Secretary of Health & Human Serv.,* 705 F.2d 638, 644 (2d Cir.1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

### B. *Five–Step Disability Determination*

The regulations mandate that the ALJ follow a five step evaluation process to determine whether an individual is disabled.[2] *See* 20 C.F.R. §§ 404.1520, 416.920. Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity ("SGA"). §§ 404.1520(b), 416.920(b). If a claimant is engaged in SGA, he will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine

whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. §§ 404.1520(d), 416.920(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes performance of their past relevant work. §§ 404.1520(e), 416.920(e). If the ALJ determines that the claimant cannot perform their past relevant work, then at Step Five, the ALJ determines whether the claimant can do any other work. §§ 404.1520(f), 416.920(f).

The claimant has the burden of showing that they cannot perform past relevant work. *Ferraris,* 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of Health & Human Serv.,* 910 F.2d 64, 65 (2d Cir.1990); *Ferraris,* 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990); *Ferraris,* 728 F.2d at 585 (four factors used to determine if claimant can perform other work: age, education, physical ability, and work experience) (citing 42 U.S.C. § 423(d)(2)(A)).

In the present case, Step One is met because plaintiff has not engaged in substantial gainful activity since May 1988. The ALJ then determined that plaintiff has a general anxiety disorder and abused alcohol, but

---

2. A claimant will be considered disabled if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's

[P]hysical or mental impairment or impairments [must be] of such severity that he is not

only unable to do his [past relevant] work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

those impairments do not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 15.) In Step Four, the ALJ determined that plaintiff was not capable of performing her past relevant work which involved a lot of public contact. (*Id.* at 18.) The ALJ's decision in Step Five, that plaintiff is capable of performing other work which does not involve public contact, is at issue here.

## C. *Step Five—The Claimant is Capable of Performing Other Work*

■ At Step Four, the ALJ determined that the plaintiff is not capable of performing her past relevant work. Nevertheless, the ALJ at Step Five determined that the plaintiff is not disabled and retains the capacity to perform jobs not requiring public contact. *Id.* In making this determination, the ALJ wholly rejected the most recent opinion of plaintiff's treating physician and found plaintiff credible only to the extent that she is limited to low stress work with infrequent public contact. (*Id.* at 17.) Both findings are stated in conclusory form and not explained with any particularity. Therefore, the record needs to be developed regarding these matters.

### 1. *Residual Functioning Capacity Standard of Review*

RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is determined by considering all relevant evidence, consisting of, inter alia, physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations which go beyond symptoms. §§ 404.1545, 416.945. Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. *Id.; see also* §§ 404.1567, 404.1569a, 416.967, 416.969a. Mental abilities are assessed by evaluation of the nature and extent of the claimant's mental limitations and restrictions and then determining the residual functional capacity for work activity on a regular and continuing basis. §§ 404.1545(c), 416.945(c). "A limited ability to carry out certain mental activities, such as limitations in understand-

ing, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the] ability to do past work and other work." *Id.* Claims that involve mental or emotional impairments require "a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Welch v. Chater,* 923 F.Supp. 17, 20 (W.D.N.Y.1996).

■ In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y.1990); *Sullivan v. Secretary of Health & Human Serv.,* 666 F.Supp. 456, 460 (W.D.N.Y.1987); *Ferraris,* 728 F.2d at 588. The RFC is then used to determine particular types of work a claimant may be able to perform. §§ 404.1545(a), 416.945(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. A person under age 50 is considered a "younger person;" whose age will not "seriously affect [claimant's] ability to adapt to a new work situation." §§ 404.1563(b), 416.963(b). Education as a vocational factor is seen to indicate the ability to meet job requirements such as reasoning, communication, and arithmetic. §§ 404.1564(a), 416.964(a). A person with a high school education and above is considered someone who is capable of performing semi-skilled through skilled work. §§ 404.1564(b)(4), 416.964(b)(4). A person with a seventh grade through eleventh grade education is generally considered to have a limited education. §§ 404.1564(b)(3), 416.964(b)(3).

If the claimant can do work in the national economy, a finding of not disabled will be made. §§ 404.1566(b), 416.966(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. *Id.* Jobs in the national economy are classified by their physical exer-

tion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." 20 C.F.R. §§ 404.1567, 416.967. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally. §§ 404.1567(a), 416.967(a). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." §§ 404.1566(a), 416.966(a). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. §§ 404.1566(b), 416.966(b).

### 2. *The ALJ's Finding that Plaintiff is Capable of Other Work*

At Step Five, the ALJ determined that the plaintiff retained the ability to perform non-exertional work except for frequent contact with the public. (Tr. at 19.) In making this determination, the plaintiff contends that the ALJ failed to give controlling weight to a report by her treating physician, William Beals, M.D. ("Dr.Beals"). As a result, the plaintiff claims that the ALJ committed reversible error because Beals' opinion that the plaintiff is incapable of performing any work is supported by the medical evidence in the record and is consistent with other substantial evidence found in the record. The plaintiff also contends that the ALJ failed to provide good reasons for not giving the report controlling weight.

#### a. *Treating Physician Rule*

The opinion of a treating physician is given controlling weight, under certain circumstances, in the belief that an ongoing relationship between doctor and patient yields a better evaluation than a one-time physical. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir.1993); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, a treating physician's opinion will be given controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. §§ 404.1527(d)(2), 416.927(d)(2).

■ If the opinion is not given controlling weight, the ALJ must give good reasons in

his decision for the weight given to the treating source's opinion. *Id.* Further, the Commissioner must consider various factors in determining what weight should be given including length of treatment relationship, frequency of examination by treating physician for the condition in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending the support or contradict the opinion. §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6). Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal. *Johnson v. Bowen*, 817 F.2d at 985.

■ In this case, it is unclear what standard the ALJ used to weigh Dr. Beals' opinions. He summarily discounted Dr. Beals' most recent report of plaintiff's condition. (Tr. at 18.) This report, dated February 2, 1996, supports the fact that plaintiff is seriously limited in her abilities to relate to co-workers; interact with supervisors; deal with work stresses; function independently; maintain concentration; and understand, remember and carry out simple, detailed, and/or complex instructions. (*Id.* at 225–26.) Dr. Beals also noted that the plaintiff experiences panic attacks and had problems adjusting to her new academic schedule, was irritable and experiencing mood swings. (*Id.* at 226.) The ALJ gave no reasons for according this report less weight, other than hinting that since this later report was made after plaintiff filed for disability, it is less reliable. This is not sufficient or explicit enough to justify valuing the later report less.

Dr. Beals had been treating plaintiff approximately every three months for about one year when he completed his February 1996 evaluation of plaintiff. While his findings in February 1996 describe the plaintiff as exhibiting more severe problems, they are consistent with evidence in the record. In March 1995, Dr. Beals noted that plaintiff's symptoms included agitation, anxiety, rapid heart beat, nausea, sweating, and hyperventilation. (*Id.* at 135.) In August 1995, Dr. Beals found the plaintiff markedly limited in her abilities to understand, remember, and to carry out detailed instructions, as well as to

interact appropriately with the general public. (*Id.* at 91.) He also found her moderately limited in many areas such as her ability to maintain attention and concentration for extended periods, her ability to get along with coworkers, and ability to adapt to changes in the work setting. (*Id.* at 91–92.) Dr. Beals found the plaintiff had moderate restrictions in her activities of daily living, moderate difficulty in maintaining social functioning, deficiencies in concentration, persistence and pace resulting in failure to complete tasks in a timely manner, and episodes of deterioration in work settings which cause her to withdraw from the situation or experience symptoms of anxiety. (*Id.* at 102.)

Plaintiff's counselor, Linda McCaffer ("McCaffer"), reported that plaintiff has a problem maintaining concentration due to her children's health problems and her problem with authority figures. (*Id.* at 165–66.) McCaffer also reported symptoms of excessive sweating, urgency to leave a situation, shakiness, and excessive rage. (*Id.* at 162.) In McCaffer's therapy notes, she stated that plaintiff was experiencing increasing fear and resentments and difficulty concentrating in school. (*Id.* at 265.) She also stated that plaintiff complained of mood swings and crying jags. (*Id.* at 269.) McCaffer wrote that plaintiff continued to have panic attacks, depressive symptoms, and that plaintiff was concerned that she was not adjusting better. (*Id.* at 290, 327.) Finally, McCaffer noted that plaintiff had a rage attack at an Alcoholics Anonymous meeting. (*Id.* at 332.)

Statements from other doctors provide further support that Dr. Beals' findings in February 1996 are consistent with the record as a whole. Dr. Mark Kline treated plaintiff from September 1987 and May 1988 and diagnosed plaintiff with severe mixed depression and anxiety symptoms due to her family problems. (*Id.* at 220.) In a January 15, 1994 report, Dr. Thomas Lazzaro stated that plaintiff is severely intra physically defenseless and devoid of ego resources, depressed, despondent, alienated, angry and agitated. (*Id.* at 223.) Dr. Nellie Mitchell's ("Mitchell") report stated that plaintiff admits to being angry, suspicious and striking out at people. (*Id.* at 300.) Plaintiff told Mitchell that she cannot leave the house at times,

does not like a lot of people around her, and feels as if she is being smothered. *Id.* Mitchell stated that plaintiff's memory is impaired, she has problems concentrating, and has some difficulty with reasoning out simple problems. *Id.* Mitchell's report categorizes plaintiff as markedly limited in her ability to carry on daily living activities, maintain social functioning, and to concentrate or complete tasks in a timely manner. She also claimed that plaintiff continually experiences episodes of deterioration in work or work-like settings which cause her to withdraw or experience symptoms of anxiety. (*Id.* at 304.) Dr. Mitchell's opinion was that plaintiff has been totally disabled since 1989. (*Id.* at 305.)

It should be noted that mental illness is not a static condition. The frequency and severity of symptoms can change over time due to various factors. The record demonstrates that plaintiff has good days and bad days, and that sometimes her medication works but sometimes it does not. The plaintiff's symptoms are consistent throughout the record; they simply differ as to degree. Given the numerous statements throughout the record which are consistent with Dr. Beals' 1996 findings, the ALJ failed to adequately explain his reasons for not giving Dr. Beals' report controlling weight.

### b. *ALJ's Determination of What Jobs Plaintiff Can Do*

Once the ALJ has determined that a claimant cannot perform her past relevant work, he must assess the claimant's RFC, and then with some specificity, describe jobs that claimant can do despite her impairments. In this case, the ALJ merely stated in his decision that Dwyer cannot have frequent contact with the public. (*Id.* at 18.) The ALJ did not provide a precise description of plaintiff's past work duties which likely caused her anxiety, nor did he specify functions which the plaintiff is still capable of performing. He also failed to present a vocational expert to show that such jobs existed in the national economy. The Second Circuit has held that where a claimant's nonexertional impairments significantly diminish her ability to work, "[t]he Commissioner should be required to present the testimony of a vocation-

al expert or other evidence concerning the existence of jobs in the national economy for an individual with [claimant's] limitations." *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996). Since the ALJ's analysis in these respects is insufficient, this case should be remanded for further development of the record.

### c. *The Credibility of Plaintiff's Subjective Complaints*

The plaintiff contends that the ALJ failed to accord the proper weight to her subjective complaints of pain. The ALJ found that the plaintiff's subjective complaints were credible only to a limited extent, yet provided no explanation as to why he found her not credible. *(Tr.* at 17.) The applicable regulations provide that throughout the evaluation process, the ALJ must consider subjective complaints of pain. *See* §§ 404.1529(a), (d), 416.929(a), (d). The ALJ though, is "not obliged to accept without question the credibility of ... subjective evidence," *Marcus,* 615 F.2d at 27; *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir.1968); *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D.N.Y.1978), even though " 'a claimant's subjective evidence of pain ... is entitled to great weight' where ... it is supported by objective medical evidence." *Simmons,* 982 F.2d at 56 (quoting *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983)). Rather, the ultimate question is whether the claimant's affliction did, given her physical and mental constitution, cause her symptoms which then became so severe that she is now unable to work. *Page v. Celebrezze,* 311 F.2d 757, 762–63 (5th Cir.1963). An ALJ who rejects a claimant's subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987).

The ALJ did consider some evidence of plaintiff's subjective complaints. He considered the fact that the plaintiff claims: she has had this panic disorder since about 1986 and with medication, she has attacks about five to six times per week lasting 15 to 20 minutes each; when she has an attack she gets a rapid heart rate, sweats, feels faint and feels as if she is in a state of rage; her condition is worse when stress levels are high; she does not dress every day; she will not go to most malls; that being under a time frame causes her anxiety and then she is unable to concentrate; and that her children have to help her shop, cook, and clean the house. (Tr. at 15–16.) After considering these facts, the ALJ then made a conclusory statement that "the claimant is credible only to the extent that she is limited to a residual functional capacity for low stress work with infrequent public contact." *(Id.* at 17.)

The ALJ failed to provide reasons for finding the plaintiff credible only to a limited extent. The plaintiff consistently complained that: working causes her extreme panic and fear, *(Id.* at 115); she is overcome by the need to leave immediately, *(Id.);* it is hard for her to be around other people, *(Id.* at 115, 207); sometimes leaving the house is hard, *(Id.* at 115, 128); she cannot finish housework because she experiences panic symptoms, *(Id.* at 118, 132, 210); she sweats, shakes, and becomes anxious, angry, confused, and impatient. *(Id.* at 122, 123, 203, 211.) Plaintiff also states that the amount of stress placed upon her due to her children's problems worsens her symptoms. *(Id.* at 125, 203.) The record demonstrates that plaintiff's complaints are credible when considered in connection with the medical reports throughout the record which document the plaintiff's similar complaints about her symptoms. *See Id.* at 135–36, 139, 143, 152, 154–55, 162, 164–65, 215–16, 222, 227, 267, 269, 274, 290, 293, 298–301, 326–28, 332.

In addition to his failure to provide reasons for not finding the plaintiff credible, the ALJ also completely failed to consider numerous factors which entitle the plaintiff's credibility to be given more weight. For example, the ALJ completely ignored statements from plaintiff's former husband that the plaintiff flies into rages, and while the plaintiff once enjoyed outside activities, she suddenly had to be forced out of the house. *(Id.* at 243.) He also failed to consider a statement from plaintiff's daughter who said that plaintiff, "Only leaves the house when she has to because being out makes her nervous," and plaintiff sometimes has to take a break from

housework to relax. (*Id.* at 126.) The ALJ also failed to take into consideration a statement from claimant's mother which related that plaintiff has had anxiety and panic attacks since she found out that her second child has the same neurological disorder as her first child, that plaintiff walked around like a "zombie" and did not want to talk to anyone, and that plaintiff would have panic attacks when she thought about her situation. (*Id.* at 253–54.) The ALJ claims that plaintiff is active for a person who claims to be disabled. However, in considering plaintiff's daily activities, the ALJ failed to address the facts that plaintiff had to withdraw from college, (*Id.* at 57); she sometimes cannot even leave the house because of her panic attacks, (*Id.* at 47); and that her children are mostly responsible for maintaining the house. Since the ALJ did not provide legitimate reasons for finding the plaintiff not credible, his evaluation of plaintiff's credibility should be developed further on remand.

### d. *Using the Grids as a Framework*

 When a claimant's impairment and related symptoms, such as pain, impose only exertional limitations and the claimant's vocational profile is listed in an Appendix 2, the Rule is applied directly to determine disability status. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). However, as in this case, where the limitations and restrictions are nonexertional only,[3] the rules in Appendix 2 do not direct factual conclusions of disabled or not disabled. Rather, the evaluation of disability is "based on the principles in the appropriate sections of the regulations." §§ 404.1569a(c)(2), 416.969a(c)(2). The ALJ determined that the plaintiff was "not disabled" using the grids in Appendix 2 as a framework. Since there is a reasonable basis for doubting whether the ALJ applied the appropriate legal standard in determining if plaintiff is disabled, the decision cannot be affirmed.

### V. *CONCLUSION*

A remand is appropriate in this case because the record does not contain pervasive evidence of disability requiring reversal and award of benefits. However, the ALJ's report is deficient in many respects. On remand, the ALJ should further develop the record with regard to the issues of: the weight given to Dr. Beals' February 1996 report; the reasons for the weight given to plaintiff's subjective complaints; and specific jobs which plaintiff can do despite her impairment, and whether they exist in the national economy. Finally, the grids found in Appendix 2, Subpart P should not be used as a framework to determine disability in this case.

Therefore, it is

ORDERED, that the decision denying plaintiff disability benefits be REVERSED and REMANDED for further findings consistent with this opinion.

IT IS SO ORDERED.

---

**3.** Nonexertional limitations include "difficulty functioning because, you are nervous, anxious, or depressed," "difficulty maintaining attention or concentration," as well as "difficulty under-standing or remembering detailed instructions." 20 C.F.R. §§ 404.1569a(c)(1)(i)–(iii), 416.969a(c)(1)(i)–(iii).