Rodney BLESSING, Plaintiff,

v.

Carolyn W. COLVIN,[1] Acting Commissioner, Social Security Administration, Defendant.

No. 09–cv–01264 (WGY).

United States District Court,
N.D. New York.

June 24, 2013.

1. At the filing of this suit, Michael J. Astrue was the original named defendant as the Commissioner of the Social Security Administration. On February 14, 2013, Carolyn W. Colvin became the Acting Social Security Commissioner and has therefore been substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d). Elec. Clerk's Notes, May 21, 2013.

368

Peter A. Gorton, Lachman, Gorton Law Firm, Endicott, NY, for Plaintiff.

Benil Abraham, U.S. Social Security Administration, New York, NY, for Defendant.

### DECISION and ORDER

WILLIAM G. YOUNG, District Judge.[2]

## I. INTRODUCTION

Rodney Blessing ("Blessing") brings this suit pursuant to section 205(g) of the Social Security Act (the "Act"), codified at 42 U.S.C. section 405(g), seeking judicial review of a decision of the Commissioner of Social Security (the "Commissioner"). Pl.'s Br. ("Blessing Br."), ECF No. 13. The Commissioner denied Blessing's application for social security benefits. Blessing requests reversal or remand of the Commissioner's decision. *Id.* at 15. This Court remands.

### A. Procedural Posture

On February 9, 2006, Blessing protectively filed an application with the Social Security Administration (the "Administration") for a period of disability and disability insurance benefits (collectively, "Disability Benefits"). Admin. R. at 12. A disability examiner denied Blessing's

request on May 16, 2006. *Id.* at 22. Blessing timely requested a hearing by an Administrative Law Judge (the "hearing officer") on June 20, 2006. *Id.* at 28. The hearing officer scheduled a video conference hearing for April 21, 2008. *Id.* at 23. At the hearing, Blessing appeared, represented by an attorney, and testified. *Id.* at 174–202. On May 27, 2008, the hearing officer reached a decision unfavorable to Blessing, *id.* at 9–11, finding that although Blessing was disabled by post-traumatic stress disorder ("PTSD") and drug addiction, he was not entitled to Disability Benefits because his drug addiction was a contributing factor material to the determination of disability, *id.* at 12–21. Subsequently, Blessing provided additional evidence and requested review by the Social Security Appeals Council (the "Appeals Council"). *Id.* at 165–67. The Appeals Council considered the additional evidence, found no reason to review the hearing officer's decision, and denied Blessing's request for review. *Id.* at 168–171. Afterwards, Blessing submitted a questionnaire by a treating physician and requested reconsideration in light of new evidence. *Id.* at 172–73. The Appeals Council considered the additional information and again denied Blessing's request for review. *Id.* at 4–7. Blessing then appealed to this Court. Compl., ECF No. 1. Blessing submitted a brief in support of reversal or remand of the Commissioner's decision, Blessing Br., and the Commissioner filed a brief in opposition to Blessing's claims, Def.'s Br. Opp'n Pl.'s Br. & Supp Comm'r's Decision Pursuant Gen. Order No. 18, ECF No. 14.

### B. Factual Background

Blessing was born on May 18, 1947. Admin. R. at 30. He claims disability beginning on December 30, 2005. *Id.* at 12.

2. Of the District of Massachusetts, sitting by designation.

The hearing officer found, pursuant to the insured status requirements, that Blessing must establish disability before March 31, 2006, to be entitled to Disability Benefits. *See id.* at 14.

### 1. Physical Impairments

Blessing accepts for this appeal the hearing officer's factual findings regarding his physical impairments. Blessing Br. 2. Thus, this Court adopts the hearing officer's finding of facts involving physical impairments:

> The record indicates a history of knee and ankle pain. December 25, 2005 x-ray of the knee indicated that the possibility of extremely minimal and early osteoarthritis could not be excluded, but other than this, there was no radiological detectable bony or joint pathology. X-ray of the left ankle showed no evidence of recent fracture, dislocation or degenerative changes; however, there was the suggestion of a tiny plantar calcaneal spur from the left calcaneal. The claimant was diagnosed with arthritis of the lower extremities (Exhibit 1F). I note however, the claimant has had no treatment regarding this impairment and the record does not reflect that it causes more than minimal limitations. Therefore, it is not considered a severe impairment.
>
> . . . .
>
> He also testified to having bad knees. It takes him a while to stand up.

Admin. R. at 14, 16.

### 2. Drug Addiction

Blessing's history of drug use is evident in almost all medical records, including medical records from physician assistant Stephen A. Scharding ("Scharding"), Progress Notes from staff psychiatrist Charles R. McGurk ("McGurk"), and medical evaluations from the United States Department of Veteran Affairs (the "VA").

Scharding, a physician assistant at the Wilkes–Barre VA Medical Center, treated Blessing for drug use on June 3 and June 8, 2006. Admin. R. at 112–14. Scharding's medical records noted Blessing's history of drug use, which included heroin dependence, nicotine dependence, and polysubstance dependence. *Id.* at 112. At that time, Scharding started Blessing on Suboxone therapy, which lasted for nearly two years at least. *Id.* at 115. Scharding, in a medical record dated April 18, 2008, stated that Blessing had stayed abstinent from drugs since June 8, 2006. *Id.*

McGurk, a staff psychiatrist at the Sayre VA Outpatient Clinic, treated Blessing five times, on January 11, March 15, June 21, and November 29, 2007, and on April 10, 2008. *Id.* at 131–41. In the January 11, 2007, Progress Note, McGurk mentioned Blessing's history of drug abuse. *Id.* at 139. According to this note, Blessing used marijuana during his service in the Vietnam War, was arrested twice after returning to the United States, and "continued to have relapses on and off for many years." *Id.* In the March 15, 2007, Progress Note, McGurk noted that Blessing suffered from "a lifetime of substance abuse including multiple drugs from many years." *Id.* at 138. In the November 29, 2007, and April 10, 2008, Progress Notes, McGurk once again commented on Blessing's experience with drug dependence and series of incarcerations related to his substance abuse. *Id.* at 131, 134.

McGurk's Progress Notes indicate that Blessing has largely been abstinent from drugs since 2006. In the January 11, 2007, Progress Note, McGurk noted that the Suboxone treatment started by Scharding had been working well. *Id.* at 139. In the March 15, 2007, Progress Note, McGurk found that "[Blessing] continue[d] to do well on Suboxone after a lifetime of sub-

stance abuse." *Id.* at 138. In the November 29, 2007, Progress Note, McGurk noted Blessing's strong proclivities towards substance abuse and remarked that Blessing had taken his wife's narcotics several weeks before "without even thinking about it." *Id.* at 134. Aside from that lapse, however, the Suboxone treatment had been effective. *Id.* In the April 10, 2008, Progress Note, McGurk wrote that "[Blessing] ha[d] been doing significantly better in regards to his substance abuse maintaining abstinence fairly well with neither alcohol nor narcotics being abused."[3] *Id.* at 131.

The VA evaluated Blessing's medical condition and issued a report in September 2007. *Id.* at 120–25. The VA's initial evaluation for PTSD recorded Blessing's drug abuse. *Id.* at 120. According to the report, Blessing smoked marijuana in Vietnam and did hard drugs after returning to the United States. *Id.* Blessing was incarcerated twice, once for shooting a policeman and once for robbing a drug connection, for a total of eighteen years. *Id.* at 121. The VA found that Blessing's substance abuse "fueled" his impulsive control issues and "in effect led to his having spent 18 years of his adult life in prison." *Id.* at 124. According to the VA, Blessing had stayed clear of drugs and alcohol for fourteen months "except for a little pot and some of his wife's [narcotics]." *Id.* at 120.

### 3. Mental Impairments

In a Disability Report filed in early 2006, Blessing indicated that "the illnesses, injuries, or conditions that limit [his] ability to work" are "[k]nee problems, arthritis, [and] drug addiction," without mentioning PTSD or other mental disorders. *Id.* at 78. In the same report, Blessing stated that he had never been seen by a doctor for mental impairments. *Id.* at 80. Thus, all records pertaining to Blessing's mental illnesses were dated after Blessing's last insured date—March 31, 2006.

McGurk's Progress Notes documented Blessing's symptoms, including prolonged PTSD, disturbed sleep, anxiety symptoms, compulsive behaviors, depressive disorder, and a Global Assessment of Functioning[4] ("GAF") score of 50. *See id.* at 131–40. In the January 11, 2007, Progress Note, McGurk recorded that Blessing, for the first time, complained of psychological symptoms. *Id.* at 139. Specifically, Blessing described to McGurk his nightmares and intrusive memories about Vietnam. *Id.* The nightmares reduced his number of hours of sleep and caused him to feel "exhausted and fatigued." *Id.* Blessing also said that he had "difficulties in his relationships with people." *Id.* Besides the Vietnam experience, the declining health of his wife ("Mrs. Blessing") had been a stressor for Blessing. *Id.* at 140. McGurk proscribed trazodone to help Blessing sleep better and Prozac for Blessing's depression. *Id.* In the March 15, 2007, Progress Note, McGurk documented in detail Blessing's experience in Vietnam. *Id.* at 137–38. In one episode,

---

**3.** The June 21, 2007, Progress Note made reference neither to Blessing's history of substance abuse nor to his efforts to abstain from drug use. *See id.* at 135–36.

**4.** The Global Assessment of Functioning ("GAF") is a scale, ranging from 0 to 100, that "indicates the clinician's overall opinion of an individual's psychological, social, and occupational functioning." *Petrie v. Astrue,* 412 Fed.Appx. 401, 406 n. 2 (2d Cir.2011).

"GAF scores from 61–70 indicate some mild symptoms or some difficulty in social, occupational, or school situations, but general functioning and the existence of some meaningful personal relationships.... GAF scores between 51–60 indicate that the individual has moderate symptoms or moderate difficulty in social, occupational, or school situations." *Id.* (citations omitted).

Blessing took over and fired a machine gun when the operator had been shot. *Id.* at 137. In another episode, Blessing witnessed a bus loaded with people blown up by a mine and subsequently became sick while retrieving body parts. *Id.* McGurk also noted that Blessing was "somewhat more optimistic" after Mrs. Blessing's chemotherapy for her aplastic anemia. *Id.* at 138. McGurk started Blessing on Celexa for depression due to his intolerance to Prozac. *Id.* In the June 21, 2007, Progress Note, McGurk confirmed that Blessing still had PTSD and depression. *Id.* at 136. McGurk started Blessing on venlafaxine for depression due to Blessing's intolerance to Celexa. *Id.* In the November 29, 2007, Progress Note, McGurk decreased Blessing's dosage of venlafaxine for depression due to Blessing's intolerance to the medication. *Id.* at 134–35. In the April 10, 2008, Progress Note, McGurk noted Blessing's "significant history of [PTSD]," frequent nightmares, and intrusive memories. *Id.* at 132. McGurk stated that Blessing had "hypervigilance," "irritability," and "a high degree of impulsivity." *Id.* Blessing also complained of "long-standing severe anxiety" and stated that he had to lie down on the bed to calm himself in severe situations. *Id.* McGurk also documented "a history of significant dysphoria intermittently" and noted that Blessing was optimistic about Mrs. Blessing's condition. *Id.* McGurk continued to prescribe venlafaxine for depression and trazodone for sleep, and he added bupropion SR to help Blessing quit smoking. *Id.* at 133. Lastly, McGurk completed a questionnaire on May 22, 2008, stating that "Mr. Blessing would have had mental illness even if there had been no substance abuse." *Id.* at 144.

The VA evaluated Blessing's PTSD in September 2007, summarizing similar facts as noted in Scharding's medical records and McGurk's Progress Notes. *Id.* at 120–25. The report discussed Blessing's history of PTSD—Blessing was initially ignorant of what PTSD was, started PTSD treatment in 2006, and was still reporting ongoing PTSD symptoms. *Id.* at 123. The evaluation confirmed a "chronic and currently moderate [PTSD]." *Id.* The report documented Blessing's two episodes of military experiences in Vietnam and confirmed that Blessing "continue[d] to have nightmares ... [and] a lot of flashbacks." *Id.* at 121. Blessing experienced "daily intrusive thoughts, memories and recollections" and was described as being "markedly hypervigilant." *Id.* at 124. The report recorded that Blessing had "about 3 to at most 4 hours of sleep at night." *Id.* Contrary to McGurk's diagnosis, the report found "no evidence of a diagnosable clinical depression." *Id.* The report assigned a GAF score of 50. *Id.*

The report found the cause of Blessing's PTSD and drug abuse to be "his combat experiences in Vietnam." *Id.* at 123. Blessing's substance abuse, according to the VA, "represented an ongoing attempt to self-medicate his PTSD symptoms." *Id.* Blessing's impulse control issues were found largely attributable to a long history of substance abuse. *Id.* at 124.

Based on the September 2007 evaluation, the VA decided in October 2008 that "[Blessing's] service connected disability renders [Blessing] permanently and totally disabled." *Id.* at 147. In addition, a VA Decision Review Officer stated that "[Blessing's] PTSD render[ed] [Blessing] permanently and totally disabled." *Id.* at 159.

### 4. Testimony

On April 21, 2008, Blessing attended a hearing before the hearing officer via video conference. *See id.* at 23. At the hearing, Blessing and his wife testified. *Id.* at 175. The testimonies of both individuals focused

on Blessing's mental impairments, *see id.* at 179–202, and Blessing admitted that he was "not really disabled physically too bad," *id.* at 187. Blessing described his daily activities, including taking care of his wheelchair-bound wife, doing laundry, and walking and feeding the dog. *Id.* at 191.

Blessing testified that he had PTSD from Vietnam and described intrusive memories. *Id.* at 180–82. These memories caused flashbacks and nightmares for Blessing. *Id.* at 180, 182. As an example, Blessing described a flashback triggered by the smell of diesel and how he coped with his flashbacks by "go[ing] to [his] room and . . . turn[ing] off the lights and just lay[ing] there." *Id.* at 182. Blessing estimated that flashbacks would occur "at least once a day," *id.* at 184, after which he would be unable to concentrate on the present for about twenty minutes, *id.* at 185. Blessing admitted his history of drug use and testified about various programs he joined to become abstinent. *Id.* at 180–82. Blessing further stated that he used drugs to cope with the flashbacks before becoming clean in 2006. *Id.* at 185–86. After becoming clean, "[Blessing's] mind[ ][was] a lot clearer," but he still "remember[ed] stuff, bad stuff a lot." *Id.* at 182.

As to past work experience, Blessing further testified that his wife owned a catering business and that he worked with her. *Id.* at 188–89. Blessing estimated that the business lasted from 1991 to some time in 2006, when Mrs. Blessing became sick. *Id.* at 189. Blessing used drugs and "ran [the business] into the ground." *Id.*

Mrs. Blessing first stated that Blessing, sick since his experience in Vietnam, "cope[d] with [his problems] by drugs and alcohol." *Id.* at 194. Mrs. Blessing made Blessing participate in two treatment programs for drug use, an unsuccessful one in 2004 and one with the VA, which had

generally been going well. *See id.* at 198–99. Mrs. Blessing said that, since starting the VA program, Blessing was "doing better now than he ever has," though he still "[could not] stay on task." *Id.* at 194; *see also id.* ("[A] good day [was] if [Blessing] [could] concentrate for one hour.").

Mrs. Blessing went on to say that Blessing "was not an asset in the business unless he could work alone." *Id.* at 194. He was abusive and unable to work with co-workers or the public. *Id.* at 194–95. According to Mrs. Blessing, even after having tasks modified in order to accommodate him, Blessing was largely unable to complete them. *See id.* at 196. In her opinion, Blessing would have been unable to work for another employer. *Id.* According to Mrs. Blessing, the business ceased in 2005, after she became extremely ill. *Id.* at 193, 198.

Mrs. Blessing also described Blessing's reactions to nightmares and flashbacks. *Id.* at 194, 200. Blessing would have nightmares "two or three times a week," where he would "wake[ ] up screaming and crying." *Id.* at 200. To cope with flashbacks during the day, Blessing went "into his room and lay in the dark." *Id.* Blessing needed to lay in the dark at least once a day, and from one to three hours at a time. *Id.* at 201.

## II. LEGAL STANDARD

Pursuant to section 205(g) of the Act, codified at 42 U.S.C. section 405(g), this Court "ha[s] power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## A. Standard of Review

 This Court may set aside a hearing officer's decision only if the hearing officer applied "an erroneous legal standard" or if the decision was not factually "supported by substantial evidence in the record as a whole." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir.1997)) (internal quotation marks omitted). A legal error exists "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards." *Dwyer v. Apfel*, 23 F.Supp.2d 223, 225 (N.D.N.Y.1998) (Hurd, M.J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987)). Substantial evidence supports a hearing officer's decision if "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (internal quotation mark omitted).

## B. Social Security Disability Standard

A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

 The Social Security Administration has promulgated a five-step sequential analysis for a determination of disability. 20 C.F.R. § 404.1520(a)(1). To be entitled to Disability Benefits, (1) the claimant must not be currently engaged in substantial gainful activity; (2) the claimant must have a "severe impairment"; (3) if the severe impairment is listed in 20 C.F.R. part 404, subpart P, appendix 1 ("Appendix 1"), the claimant is disabled and the analysis ends at this step; (4) if not, the claimant's "residual functional capacity" must be insufficient for him to perform his past relevant work; and (5) the claimant must be unable to do any other work considering his age, education, and work experience. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999) (quoting and summarizing the Administration's five-step sequential analysis). The burden of proof is on the claimant for the first four steps; the burden of proof is on the Administration with respect to the fifth step. *E.g., Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

 For a determination of disability, the Commissioner must consider (1) objective medical and clinical findings; (2) examining physicians' diagnoses and opinions; (3) the testimony of the claimant and other observers; and (4) the claimant's age, educational background, and work history. *Brunson v. Callahan*, No. 98–6229, 1999 WL 1012761, at *1 (2d Cir. Oct. 14, 1999). "The relative weight of each factor is ... entrusted to the Commissioner's sound discretion." *Id.*

## C. Standard for Cases Involving Substance Abuse

 In cases involving substance abuse, a claimant must first satisfy the five-step analysis and then prove that substance abuse is not "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Substance abuse is a contributing factor if the claimant would not be disabled "if [the claimant] stopped using drugs." 20 C.F.R. §§ 416.935(b)(1). The burden of proof is on the claimant to establish disability without drug use. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123–25 (2d Cir.2012).

## III. THE HEARING OFFICER'S DECISION

The hearing officer's decision first summarized the law governing a finding of disability with and without drug use. Admin. R. at 13–14. Then, the hearing officer found Blessing's last insured date to be March 31, 2006. *Id.* at 14. To determine whether Blessing was disabled before the last insured date, considering his drug use, the hearing officer went through the five-step analysis, concluding that Blessing was disabled. *Id.* at 14–19. Specifically, the hearing officer found that (1) Blessing was not engaged in substantial gainful activity; (2) Blessing's PTSD and drug addiction combined met the severe impairment requirement; (3) Blessing's severe impairment was not listed in Appendix 1; (4) Blessing was unable to perform past relevant work with his residual functional capacity; and (5) no job exists in significant numbers in the national economy that Blessing could perform. *Id.* In reaching this conclusion, the hearing officer considered Blessing's medical records, his testimony and that of his wife, and his age, educational background, and work history. *Id.*

Next, the hearing officer noted Blessing's history of drug abuse and asked whether Blessing's substance abuse was a contributing factor material to the determination of disability. The hearing officer followed the Administration's standard and considered whether Blessing would still be disabled if he stopped using drugs. *Id.* at 19–20. For this purpose, the hearing officer implicitly started a second round of the five-factor analysis. The hearing officer failed to expressly mention the first step, although given the hearing officer's earlier determination that Blessing was not engaged in any substantial gainful activity, satisfaction of that step was likely presumed. At the second step, the hearing officer found that Blessing's remaining impairment without drug use failed to meet the severe impairment requirement. *Id.* Thus, the hearing officer stopped at the second step and concluded that Blessing would not be disabled were he not using drugs. *Id.* Pursuant to the Act, the hearing officer denied Blessing's application for Disability Benefits. *Id.* at 20.

## IV. ANALYSIS

The hearing officer correctly stated the social security disability standard in deciding Blessing's disability and the standard for deciding whether Blessing's drug use was a contributing factor material to his determination of disability. At the outset, the hearing officer correctly noted the last insured date and set the focus of the analysis on the relevant period before March 31, 2006, pursuant to sections 216(I) and 223 of the Act.

In the initial disability analysis considering Blessing's drug use, the hearing officer carefully followed the Administration's five-step analysis. The hearing officer cited and analyzed all medical records on file and the testimony of Blessing and Mrs. Blessing. This Court rules this portion of the hearing officer's analysis sound.

The hearing officer then proceeded to decide whether Blessing would be disabled were he not using drugs. The hearing officer applied the correct standard and asked whether Blessing would still be disabled if he stopped the substance use. This Court first notes that the standard for deciding disability ought remain consistent in the different rules of the Administration. Therefore, in light of 20 C.F.R. sections 404.1535(b)(1) and 416.935(b)(1), a decision of disability without drug use necessarily incorporates the disability determination standard and calls for a second run of the five-step analysis, assuming the

claimant "stopped using drugs."[5] 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). The hearing officer concluded the second run of the five-step analysis at step two, finding that Blessing had no severe impairment or combination of impairments without drug use. In reaching that conclusion, the hearing officer correctly stated the rule for finding severe impairments— whether the remaining limitations would have more than a minimal impact on Blessing's ability to perform basic work activities.

■■■ In the second round of the five-step analysis, however, the hearing officer failed properly to consider medical records dated after Blessing's last insured date. The hearing officer found "little evidence prior to his date last insured" and "simply no medical evidence to support a finding of disability prior to that date." Admin. R. at 20. Although all of Blessing's medical records pertaining to his mental impairments were dated after the last insured date, they may nevertheless be probative. A claimant "could demonstrate ... disability without contemporaneous evidence." *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989); *see id.* at 38–41 (upholding denial of disability benefits based on evidence dated before the last insured date but emphasizing the retroactive value of medical records dated after the last insured date); *see also Carnevale v. Gardner*, 393 F.2d 889, 890–91 (2d Cir.1968) (remanding the Administration's denial of disability benefits

based on failure to consider medical records dated after the last insured date). In this case, the medical records are within two years of the last insured date, and two treating physicians described Blessing's PTSD symptoms. Specifically, McGurk's five Progress Notes documented in detail Blessing's anxiety symptoms, nightmares, intrusive memories, compulsive behaviors, and depression disorder. McGurk's treatment included two years of administration of sleep medication and antidepressive drugs. In his decision, the hearing officer cited only McGurk's April 10, 2008, Progress Note to reach the conclusion that Blessing "ha[d] only a low level of depression" without drug use. Admin. R. at 20. The hearing officer failed to account for other findings in McGurk's April 10, 2008, note. More importantly, the hearing officer failed to mention the other four Progress Notes or the questionnaire by McGurk. These medical records may be particularly relevant because Blessing largely stayed abstinent from drugs during the period in which he was treated by McGurk. Thus, Blessing's medical condition without drug use between 2006 to 2008 is probative concerning Blessing's condition before March 31, 2006, the last insured date. Accordingly, the hearing officer ought consider this medical evidence in reaching a conclusion about Blessing's disability without drug use.[6]

■■■ When analyzing medical records after the last insured date, the hearing

**5.** The hearing officer emphasized Blessing's history of drug use, including drug-related incidents decades before the claimed period of disability. The relevancy of this evidence depends on the relevant period of drug use in relation to the claimed period of disability. The "contributing factor" language in the statute is silent as to whether the relevant period of drug use shall be coextensive with the claimed period of disability. *See* 42 U.S.C. § 423(d)(2)(C). The Administration's rule stipulates that drug use is "a contributing factor" if the Administration would not deem the claimant disabled "if [the claimant] stopped using drugs." 20 C.F.R. § 404.1535(b)(1). The word "stopped" in the rule suggests that the relevant period of drug use is indeed coextensive with the claimed period of disability.

**6.** The hearing officer touched upon Blessing's drug use in the initial determination of disability. When deciding Blessing's residual capacity with drug use, the hearing officer found that "drugs and alcohol were a very material part of [Blessing's] impairment."

officer should construe the Act liberally. *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 260 (2d Cir.1988) ("[T]he Social Security Act is a remedial statute, to be broadly construed and liberally applied." (quoting *Gold v. Sec'y of Health, Educ. & Welfare,* 463 F.2d 38, 41 (2d Cir.1972)) (internal quotation marks omitted)). Particularly, the relevance of the medical records dated after the last insured date can be corroborated by testimonies. *See Likes v. Callahan,* 112 F.3d 189, 191 (5th Cir. 1997) (per curiam) (remanding the Administration's decision for failure to consider "retrospective medical diagnoses and the corroborating lay evidence"); *see also Jones v. Chater,* 65 F.3d 102, 103 (8th Cir.1995). In light of the testimony of Blessing and Mrs. Blessing, the hearing officer ought consider the medical records dated after the last insured date for the determination of disability without drug use.

In a separate argument, Blessing urges this Court to decide "whether the [PTSD] caused by [Blessing's] experience's [sic] in Vietnam *caused* the devastating drug and alcohol addiction and *remained* after [Blessing] became abstinent from the drugs and alcohol." Blessing Br. 1. The Act stipulates that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Administration's rule provides that "[t]he key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to

Id. at 17. The hearing officer emphasized that "no evidence [exists] regarding [Blessing's] psychiatric condition . . . prior to [the last insured date]." *Id.* at 18. To the extent this analysis bears on the determination of

the determination of disability is whether [the hearing officer] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). Under the Administration's rule, the cause of the drug use is irrelevant—a finding of disability under the rule excludes from consideration symptoms attributable to drug abuse. Thus, Blessing essentially urges this Court to declare the Administration's rule erroneous and further to interpret the Act as allowing an exception when military service and service-related PTSD is the cause of the drug abuse. While intrigued, this Court need not reach this issue.

## V. CONCLUSION

This Court REMANDS this case to the Administration to consider the medical records dated after the last insured date for the determination of Blessing's disability without drug use.

**SO ORDERED.**

Blessing's disability without drug use, the hearing officer failed to properly consider medical evidence dated after the last insured date for its retrospective value.